**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

MEGHAN MAGEE, *et al.*,                         :
                                                :
              Plaintiffs,        :      Civil No. 17-565 (RBK/JS)
                                                :
             v.                 :      **OPINION**
                                                :
FRANCESCA'S HOLDING CORP., *et al.*,            :
                                                :
             Defendants.        :
                                                :
                                                :
                                                :
                                                :

**KUGLER**, United States District Judge:

Plaintiffs in this action are a conditionally certified Fair Labor Standards Act ("FLSA") collective action comprised of over 350 individuals asserting various wage and hour violations against Defendants Francesca's Collections, Inc. and Francesca's Holdings Corp. (collectively "Defendants"). Presently before the Court are two motions: Defendants' Motion for Partial Summary Judgment (Doc. 140), which seeks summary judgment on the claims of 97 opt-in Plaintiffs who joined this action outside the applicable statute of limitations period; and Defendants' Motion to Compel Arbitration (Doc. 176), which seeks to compel 151 individual Plaintiffs to arbitrate their claims. For the reasons expressed herein, Defendants' Motion for Partial Summary Judgment is DENIED and Defendants' Motion to Compel Arbitration is GRANTED.

## I.      BACKGROUND

Francesca's is a boutique retailer that sells women's clothing and accessories. (Doc. 140-1 at 8.) Plaintiffs were employed by various Francesca's locations as "Boutique Team Leaders" or "Boutique Managers." (Doc. 176-1 at 7.) Plaintiffs allege that Defendants misclassified them as

exempt from the FLSA's overtime provisions, underfunded store budgets to avoid paying overtime, and violated wage and hour laws of New Jersey, Pennsylvania, Illinois, Ohio, and New York. (*Id.*)

On November 6, 2018, this Court granted Plaintiffs' motion for conditional class certification under the FLSA. (Doc. 85.) After several disputes regarding the form and content of the class notice, this Court approved the final class notice on January 28, 2019. (Doc. 96.) The final class notice was issued on February 22, 2019, and the notice period closed on April 5, 2019. (Doc. 139-1 at 5.) Including named Plaintiffs, 356 individual Plaintiffs joined the collective action. (Doc. 176-1 at 7.)

### Motion for Partial Summary Judgment

Of these 356 individual Plaintiffs, 97 filed their written consents to join the lawsuit outside of the applicable FLSA statute of limitations. (Doc. 182 at 3.) In an attempt to overcome this issue, Plaintiffs moved for categorical equitable tolling from the initial filing of the Complaint on January 27, 2017, to January 28, 2019, when the final class notice was approved. (Doc. 139.) On December 18, 2019, Judge Schneider denied Plaintiffs' request for categorical equitable tolling. (Doc. 182.) While he found that Plaintiffs had exercised reasonable diligence in pursuing their rights, he also found that Plaintiffs had not shown that inequitable circumstances prevented them from timely asserting their rights. (*Id.* at 7–8.) However, he noted that his denial addressed only *categorical* equitable tolling, and did not express an opinion as to whether individual opt-in plaintiffs could later demonstrate that equitable tolling applied to their specific situation. (*Id.* at 16.)

In response to Plaintiffs' motion for equitable tolling, Defendants cross-moved for summary judgment as to the claims of the 97 Plaintiffs who joined outside the statute of limitations. (Doc. 140.)

**Motion to Compel Arbitration**

In October 2019, noting that a group of 151 individual Plaintiffs had executed arbitration agreements, Defendants moved to compel arbitration of those Plaintiffs' individual claims. (Doc. 176.) Two different arbitration agreements exist: Defendants allege that 84 individuals accepted the "2018 Arbitration Agreement," and that 67 individuals accepted the "2017 Arbitration Agreement." (Doc. 176-1 at 9.)

***2018 Arbitration Agreement***

Defendants introduced the 2018 Arbitration Agreement to employees on September 14, 2018. (Doc. 176-1 at 9.) Existing employees were advised to log in to Francesca's "internal training and document portal, called 'franYOU,'" to review the 2018 Arbitration Agreement and other documents. (*Id.*) To access the arbitration agreement through franYOU, employees would click a link titled "Handbook Documents: 2018 Review & Acknowledgment." (*Id.* at 10.) This would open a menu containing between two and three links that employees were required to open, one of which was "Arbitration Agreement." (*Id.*) Clicking "Arbitration Agreement" brought employees to a page with a link titled "Arbitration Agreement Review & Acknowledgment." Clicking this launched a PDF file of the 2018 Arbitration Agreement. (*Id.*) After reviewing this file, employees were directed to click the other link on the page, "Acknowledgment." Clicking "Acknowledgment" directed employees to a "Quiz" that asked the following question:

> You understand and agree that by clicking YES (below), you are providing your electronic signature and that such signature shall be deemed an original signature. Further, you understand and agree that by clicking below, you are consenting to and accepting this agreement to arbitrate.
>
> If you do not consent to this agreement to arbitrate, click NO.
>
> A. Yes
> B. No

3

(*Id.* at 11.)

For new hires, rather than existing employees, Francesca's used a similar process: the new employee would be given instructions to create an account in a system called "Workday," and would then click a link in their Workday inbox that directed them to complete on-boarding tasks. Clicking this link pulled up the 2018 Arbitration Agreement, and directed the employee to select one of the following after reviewing the agreement:

> I understand and agree that I am consenting to and accepting this agreement to arbitrate. I understand and agree that I am providing my electronic signature and that such signature shall be deemed an original signature.
>
> I understand and DO NOT CONSENT to this agreement to arbitrate. I understand and agree that I am providing my electronic signature and that such signature shall be deemed an original signature.

(Doc. 176-1 at 12.)

As for content, the five-page 2018 Arbitration Agreement stated that employees agreed to submit to arbitration any "grievances, complaints, disputes, claims, allegations and causes of action arising out of or relating in any way to the Parties' employment relationship and the termination of the employment relationship." (Doc. 176-3 at 5.) It stated that, by agreeing to arbitrate, employees agreed to give up their right to a jury trial, and that employees waived the right to assert class or collective action claims in any court or in arbitration. (*Id.* at 6–7.) It specifically stated that claims covered under the agreement included "wage and hour claims and claims for wages or other compensation or benefits" under the FLSA and claims under "any other federal, state, local, or foreign law." (*Id.* at 6.) It also stated that the agreement "to arbitrate applies to all Claims regardless of whether they have already accrued or will accrue on or after the Effective Date of this Agreement." (*Id.*) The agreement contained a total of 21 numbered sections,

4

with the title of each section underlined, and several terms or sections—such as the "Waiver of Trial by Jury" section—bolded and underlined.

### *2017 Arbitration Agreement*

The 2017 Arbitration Agreement was first presented to employees in April 2017, and also used the franYOU process for existing employees. (Doc. 176-1 at 15.) For new hires, Francesca's used "iCIMS human resources management system" rather than Workday. (*Id.*) New employees were directed to log in to iCIMS and review the required onboarding documents. (*Id.* at 16.)

The three-page 2017 Arbitration Agreement stated that employees agreed to arbitrate any "dispute, claim, or controversy" the employee "has, or may have in the future." (Doc. 176-2 at 17.) The agreement stated that it covered "***all disputes*** not prohibited by law from arbitration." (*Id.*) (emphasis in original). The 2017 agreement similarly waived the right to a jury trial and prohibited employees from arbitrating or litigating any claim on a class or collective action basis. (*Id.* at 18.) The agreement contained bolded headers for each section and bolded or underlined a number of terms within several sections.

Based on these two arbitration agreements, Defendants request that this Court compel the 151 Plaintiffs who executed arbitration agreements (the "Arbitration Plaintiffs") to arbitrate their claims on an individual basis. (Doc. 176-7 at 1.)

Plaintiffs oppose Defendants' motion for partial summary judgment, as well as Defendants' motion to compel arbitration. As both motions are fully briefed and ripe for review, the Court addresses them now.

## II.   LEGAL STANDARD

### A.  Motion for Summary Judgment

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Anderson*, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in his favor. *Id*. at 255; *Matsushida*, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which a jury might return a verdict in his favor. *Id*. at 257. The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B.  Motion to Compel Arbitration

"The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., creates a strong federal policy in favor of arbitration." *Thompson v. Real Estate Mortg. Network, Inc*., Civ. No. 11-1494, 2019 WL 2636307, at *6 (D.N.J. June 26, 2019) (citing *Harris v. Green Tree Fin. Corp*., 183 F.3d 173,

178-79 (3d Cir. 1999)). "To achieve that aim, the FAA authorizes a party to enforce a valid arbitration agreement by moving to compel arbitration." *Id.* (citing *In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109, 116 (3d Cir. 2012)). On a motion to compel arbitration, the Court must inquire: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*; see also 9 U.S.C. § 4.

"Whether a district court considers a motion to compel arbitration under a Federal Rule of Civil Procedure 12(b)(6) standard or a summary judgment standard depends on whether the Complaint sets forth the basis for arbitration." *Seme v. Gibbons, P.C.*, Civ. No. 19-857, 2019 WL 2615751, at *2 (E.D. Pa. June 26, 2019). If the face of the complaint and documents relied on in the complaint clearly show that a party's claim is subject to an enforceable arbitration clause, the Court will use a "Rule 12(b)(6) standard without discovery's delay." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 777 (3d Cir. 2013) (internal citation omitted). The motion to dismiss standard is inappropriate, however, where "the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate." *Id.* at 774. In this situation, courts must "use the summary judgment standard under Rule 56(a), in which the motion [to compel] should be granted where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Seme,* 2019 WL 2615751 at *2 (quoting *Maddy v. Gen. Elec. Co.*, 629 F. App'x 437, 440 (3d Cir. 2015).

The Complaint in this case does not mention any arbitration agreement, and, in briefing the motion to compel arbitration, Plaintiffs and Defendants rely on evidence outside the pleadings.

The Court "therefore appl[ies] a summary judgment standard to resolution of Defendants' Motion." *Seme*, 2019 WL 2615751, at *2.

## III.   DISCUSSION

### A.  Motion for Partial Summary Judgment

In moving for partial summary judgment, Defendant argues that 97 individual Plaintiffs opted-in to this action outside of the applicable statute of limitations, and thus the Court should grant judgment to Defendants as a matter of law. (Doc. 140-1.) Plaintiffs concede that 97 individuals opted-in outside the standard FLSA statute of limitations, but they argue that Defendants' motion for summary judgment is premature at this stage in the litigation. (Doc. 156 at 20.) Plaintiffs argue that discovery is not yet at the stage in which individual opt-in members could appropriately seek equitable tolling.[1] (*Id*.)

The Court agrees with Plaintiffs. Although Judge Schneider's December 2019 opinion denied Plaintiffs' motion for "categorical equitable tolling," it explicitly declined to express an opinion as to whether any individual opt-in Plaintiff could make an appropriate showing for equitable tolling at a later stage in the case. (Doc. 182 at 16.) However, Defendants' motion does not address the applicability of equitable tolling to *individual* Plaintiffs, and instead seeks summary judgment purely on the ground that categorical equitable tolling is inappropriate.

As Judge Schneider noted, the denial of categorical equitable tolling does not preclude the possibility that further discovery may allow individual plaintiffs to seek equitable tolling. Therefore, the Court declines to grant summary judgment for Defendant at this stage in the case.[2] *See, e.g., Thompson*, 2019 WL 2636307, at *14 (noting that a later motion for equitable tolling as

---

[1] At the time Defendants' motion for partial summary judgment was filed, discovery had only been conducted on the issue of conditional class certification.

[2] This ruling does not affect Defendants' ability to bring a motion for summary judgment once appropriate discovery has been completed. The Court expresses no opinion here as to the likelihood of success of such a motion.

to specific plaintiffs could be granted despite the denial of an earlier motion for equitable tolling); *Ewing v. First Energy Corp.*, Civ. No. 17-01573, 2018 WL 6715725, at *3 (W.D. Pa. Dec. 21, 2018) (denying a motion for categorical equitable tolling of putative class members' claims because the plaintiff "had not carried her burden to demonstrate that any of the factors justifying equitable tolling exist," but adding that, "[o]f course, this conclusion does not preclude [p]laintiff from later seeking equitable tolling, upon a proper showing" of the necessary factors); *Schonewolf v. Waste Mgmt., Inc*., Civ. No. 17-3745, 2018 WL 1381133, at *4 (E.D. Pa. Mar. 19, 2018) (denying a defendant's motion for summary judgment based on statute of limitations grounds, noting that further discovery was necessary to determine if equitable tolling applied to an individual's claim); *Smith v. Merck & Co*., Civ. No. 13-2970, 2016 WL 1690087, at *9 (D.N.J. Apr. 27, 2016) (denying the plaintiffs' categorical motion for equitable tolling, but stating that "[t]his denial, however, is without prejudice to the individual opt-in plaintiffs' right to move before this Court to have the statute of limitations equitably tolled as to their claims").

### B. Motion to Compel Arbitration

In their Motion to Compel Arbitration, Defendants argue that two groups of opt-in Plaintiffs must be compelled to arbitrate their claims on an individual basis: the 84 Plaintiffs who assented to the 2018 Arbitration Agreement, and the 67 Plaintiffs who assented to the 2017 Arbitration Agreement. Defendants argue that these Plaintiffs' claims fall within the scope of their respective arbitration agreement, and that the FAA thus compels arbitration.

Plaintiffs do not dispute that their claims are covered by the arbitration agreements,[3] but they raise a number of arguments as to why the 2017 and 2018 Arbitration Agreements should not

---

[3] Although Plaintiffs do not dispute that their claims are covered, the Court briefly notes the provisions covering the claims at issue here. The 2017 Arbitration Agreement covers "all disputes not prohibited by law from arbitration, including statutory and common law claims, whether under state, federal, or local law." (Doc. 176-2 at 17.) The 2018 Arbitration Agreement includes similar language, but also specifically covers wage and hour claims under state and

be enforced: (1) Defendants have waived their ability to seek arbitration; (2) the agreements are invalid because Plaintiffs did not assent to them; (3) Defendants' implementation of the agreements constituted improper contact with putative FLSA Collective members, invalidating any agreement to arbitrate; and (4) even if the arbitration agreements are valid, it is up to the arbitrator to determine whether Plaintiffs waived their right to proceed collectively. (Doc. 179.) The Court addresses each argument in turn.

### i.      Whether Defendants Waived the Right to Arbitrate

Relying largely on the length of time between the creation of the 2017 Arbitration Agreement and the filing of the motion to compel in October 2019, Plaintiffs argue that Defendants have waived their right to enforce arbitration. (Doc. 179 at 15.)

"Consistent with the strong preference for arbitration in federal courts, waiver is not to be lightly inferred, and waiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 208 (3d Cir. 2010) (citing *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068–69 (3d Cir. 1995)). "However, if a party acts 'inconsistently with the right to arbitration, [the court] will not hesitate to hold that the right to arbitrate has been waived where a sufficient showing of prejudice has been made by the party seeking to avoid arbitration.'" *Thompson*, 2019 WL 2636307, at *7 (citing *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d at 117).

---

federal law. (Doc. 176-3 at 5–6.) Noting that "[t]here is a 'strong presumption in favor of arbitration, and doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,'" and noting the wide scope of the agreements here, Plaintiffs' claims here are clearly covered. *Dimattei v. Diskin Motors, Inc*., Civ. No. 16-5183, 2017 WL 1283943, at *4 (E.D. Pa. Apr. 6, 2017) (quoting *Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997)).

In determining whether a party has waived its right to arbitrate, courts within the Third Circuit apply the test developed in *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912 (3d Cir. 1992), which directs the court to examine six factors:

> (1) timeliness or lack thereof of the motion to arbitrate; (2) extent to which the party seeking arbitration has contested the merits of the opposing party's claims; (3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings; (4) the extent to which a party seeking arbitration engaged in non-merits motion practice; (5) the party's acquiescence to the court's pretrial orders; and (6) the extent to which the parties have engaged in discovery.

*In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d at 117 (citing *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011)). The *Hoxworth* factors are "nonexclusive," and "the waiver determination must be based on the circumstances and context of the particular case." *Id.* at 118.

### a. Timeliness

When a "party's motion to compel arbitration occurred in a reasonably timely fashion, this factor weighs against waiver." *Thompson*, 2019 WL 2636307, at \*7 (citing *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 598 (3d Cir. 2004)). However, where there is a significant delay in filing a motion to compel arbitration, a court may find that the delay is indicative of waiver. *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d at 118. In considering the length of the delay, a court may also consider whether the party seeking arbitration has provided a satisfactory explanation for its delay. *Gray Holdco, Inc.*, 654 F.3d at 455.

Plaintiffs propose several time periods that could be used to gauge Defendants' delay in seeking arbitration. The first time period runs from April 2017, when the 2017 Arbitration Agreement was first implemented, to October 2019, when Defendants filed the motion to compel arbitration. (Doc. 179 at 15.) The second would begin in December 2017, when the first Plaintiff

who executed an arbitration agreement filed her consent to join. (Doc. 179 at 18–19.) Finally, Plaintiffs argue that, at best, Defendants' delay began running in April 2019, when Defendants directly raised the issue of arbitration with Plaintiffs' counsel. (Doc. 179 at 19–20.) In response, Defendants argue they could not have known the identity of Plaintiffs who executed arbitration agreements prior to the close of the opt-in period, and thus any delay cannot be measured before April 2019. (Doc. 180 at 7–8.)

When addressing this timeliness factor in the context of collective actions, courts within the Third Circuit have found that a "Defendant could not have known which or how many members of the class had agreed to arbitration until the end of the opt-in period." *Jones v. Judge Tech. Servs. Inc.*, Civ. No. 11-6910, 2014 WL 3887733, at *4 (E.D. Pa. Aug. 7, 2014); *see also Thompson*, 2019 WL 2636307, at *8 (finding the significance of multiple years' delay to be "substantially reduced" where defendants brought a motion to compel shortly after the opt-in period closed). Applying this standard here, the earliest date which Defendants could have known which members of the class had agreed to arbitration was April 2019, when the notice period closed. Thus, the Court finds that a six-month delay exists between the close of the notice period in April 2019 and Defendants' filing of the motion to compel in October 2019.

The length of time found to constitute waiver is fact specific and varies case by case. *See, e.g., Gray Holdco, Inc.,* 654 F.3d at 455 (finding that 10-month delay weighed toward waiver); *Schultz v. Midland Credit Mgmt., Inc*., Civ. No. 16-4415, 2019 WL 2083302, at *4 (D.N.J. May 13, 2019) (four-month delay did not weigh towards finding of waiver); *Nepomuceno v. Midland Credit Mgmt., Inc*., Civ. No. 14-05719, 2017 WL 2267261, at *5 (D.N.J. May 24, 2017) (delay weighed toward waiver when, after the Court granted the "[p]laintiff's motion for class certification, [the defendant] waited another seven weeks before seeking leave to file a motion to

compel arbitration"); *Nationwide Mut. Fire Ins. Co. v. Geo. V. Hamilton, Inc*., Civ. No. 08-0646, 2010 WL 1445554, at *5 (W.D. Pa. Apr. 9, 2010), *aff'd*, 410 F. App'x 537 (3d Cir. 2011) (finding no waiver where defendant asked plaintiff to submit to arbitration within two months of suit, and filed a motion to compel arbitration within a week of plaintiff's denial).

Here, Defendants delayed filing a motion to compel arbitration for over six months after the close of the notice period. Defendants again delayed after raising the issue with Plaintiffs' counsel later in April 2019, and again delayed after raising the issue of arbitration during a Court conference in July 2019. In explaining this six-month delay, Defendants argue that Francesca's poor financial condition impacted its ability to file a motion to compel arbitration. (Doc. 180 at 9–10.) Defendants have cited this same poor financial condition when explaining difficulties with discovery. (Doc. 170 at 1.) While the Court accepts Defendants' explanation of its financial situation, it must be noted that these same financial difficulties apparently did not bar Defendants from filing a cross-motion for partial summary judgment in May 2019. (Doc. 140.) Thus, the Court finds that the first *Hoxworth* factor weighs in favor of waiver.

### b. Litigation of Merits

Plaintiffs argue that Defendants' "robust defense of the case"—which they claim includes opposing Plaintiffs' motion for equitable tolling (Doc. 139) and motion for leave to file amended complaint (Doc. 172), as well as engaging in discovery disputes—supports waiver because it is inconsistent with an intent to arbitrate. (Doc. 179 at 21–22.) Defendants argue that the merits of Plaintiffs' claims have not yet been contested at all, as all litigation has focused on the statute of limitations and conditional certification.

Although Defendants did file a motion for partial summary judgment, this motion only addressed the statute of limitations. Further, the Plaintiffs at issue in that motion were largely

separate from the group of Plaintiffs who executed arbitration agreements. Thus, litigation has not focused on the merits of the Arbitration Plaintiffs' claims. *See Nepomuceno v. Midland Credit Mgmt., Inc*., 2017 WL 2267261, at \*5 (finding second *Hoxworth* factor weighed against waiver even though the defendant had opposed the plaintiff's motion for class certification); *c.f. Thompson*, 2019 WL 2636307 (finding litigation of merits factor to weigh against defendants where defendants filed three motions to dismiss, a Third Circuit appeal, and a motion for judgment on the pleadings). Accordingly, this factor weighs against waiver.

### c.   *Informing adversary of intent to arbitrate*

Plaintiffs argue that Defendants delayed providing notice of their intent to seek arbitration until April 2019, despite the fact that the arbitration agreements existed since 2017. (Doc. 179 at 24.) Defendants argue that they identified arbitration as an affirmative defense as early as January 2018, and that it notified Plaintiffs again in April 2019 after the close of the notice period. (Doc. 180 at 11–12.)

"[B]ecause the FLSA requires each plaintiff to opt into the class, Defendant[s] could not have known that the class would contain any Arbitration Plaintiffs until the first one opted in. Thus, Defendant[s] did not bear the responsibility to notify Plaintiffs of its intention to enforce the arbitration agreements before this event occurred." *Jones v. Judge Tech. Servs. Inc*., Civ. No. 11-6910, 2014 WL 3887733, at \*5 (E.D. Pa. Aug. 7, 2014) (citing *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1525 (2013)). Here, the first Arbitration Plaintiff—Plaintiff Prulello—joined in December 2017. As Prulello had executed an arbitration agreement, Defendants had a responsibility at this point to notify Plaintiffs. But rather than notifying Plaintiffs that Prulello executed an arbitration agreement, on February 7, 2019, Defendants instead confusingly stipulated to Prulello replacing the then-existing New Jersey Class Representative. (Doc. 98.) On February

21, 2019, Defendants did provide some notice by listing arbitration as an affirmative defense in their Answer to Plaintiffs' Amended Complaint. (Doc. 99 at 20.) And, beginning in April 2019, Defendants directly and consistently notified both Plaintiffs and this Court that they would be seeking to compel arbitration. However, particularly in light of Defendants' stipulation to Prulello as New Jersey Class Representative, Defendants "could have provided notice much sooner—from the start of this litigation, it suspected an arbitration agreement existed." *Kausar v. GC Servs. Ltd. P'ship*, Civ. No. 15-6027, 2018 WL 4676041, at *4 (D.N.J. Sept. 27, 2018). Accordingly, this factor weighs in favor of finding waiver.

### d.  *Non-merits motion practice*

When considering whether non-merits motions practice weighs towards a finding of waiver, courts look to whether the moving party has engaged in dilatory or abusive motions. *Thompson,* 2019 WL 2636307 at *10. Since the first Arbitration Plaintiff was identified, Defendants have engaged in non-merits motion practice relating to discovery issues. However, non-merits motion practice would have occurred regardless of arbitration, as roughly 200 Plaintiffs in this action did not execute arbitration agreements, and "this action would have proceeded in some measure regardless of whether the arbitration agreements signed by some class members were enforced." *Jones v. Judge Tech. Servs. Inc.*, 2014 WL 3887733, at *5. Therefore, this factor weighs against waiver.

### e.  *Acquiescence to pretrial orders*

Plaintiffs argue that Defendants' consistent acquiescence to pretrial schedules and orders supports waiver. (Doc. 179 at 25–26.) However, similar to the last factor, Plaintiffs' argument fails to account for the fact that these pretrial directives applied to the entire litigation, including the approximately 200 Plaintiffs who did not sign arbitration agreements, and thus would have

15

required Defendants' compliance regardless of any arbitration provisions. *See Jones v. Judge Tech. Servs. Inc.*, 2014 WL 3887733, at *5 (noting that a defendant's "acquiescence with our directives must be contextualized with the fact that the majority of the class did not sign arbitration agreements. Thus, this action would have proceeded in some measure regardless of whether the arbitration agreements signed by some class members were enforced"). Accordingly, this factor also weighs against finding waiver.

### f.  Discovery

Finally, Plaintiffs argue that extensive discovery relating to conditional certification has taken place, and Defendants never sought to limit the scope of this discovery based on the arbitration agreements. (Doc. 179 at 26–27.)

When examining the extent of discovery, this final *Hoxworth* factor "must also be scrutinized in light of the fact that discovery would commence as to the non-arbitration plaintiffs regardless of the fate of the Arbitration Plaintiffs." *Jones v. Judge Tech. Servs. Inc.*, 2014 WL 3887733, at *6. Here, since arbitration did not apply to at least 200 of the opt-in Plaintiffs, discovery would have progressed even if Defendants had not delayed in moving for arbitration. The Court also notes as significant that, before filing a motion to compel arbitration, Defendants did attempt to limit discovery based on an intent to arbitrate. For example, in June 2019, Plaintiffs reported to the Court that Defendants did not want to proceed with a discovery schedule until the Arbitration Plaintiffs' involvement in the matter was addressed. (Doc. 159 at 3.) In July 2019, Defendants had argued that the "commencement of discovery and the entry of a discovery management plan is premature" until the issue of arbitration was addressed. (Doc. 163-1 at 1–2.) While arbitration certainly could have been addressed earlier had Defendants not waited six months before filing its motion, Defendants' repeated unwillingness to proceed with discovery

relating to the Arbitration Plaintiffs is consistent with an intent to arbitrate. Accordingly, the Court finds that this factor weighs against waiver.

As detailed above, four of the six *Hoxworth* factors weigh against a finding of waiver. Although the six-month delay in moving for arbitration is noteworthy, such a delay, standing alone, does not constitute waiver. *See James v. Glob. TelLink Corp.*, Civ. No. 13-4989, 2016 WL 589676 (D.N.J. Feb. 11, 2016), *aff'd sub nom. James v. Glob. TelLink Corp*, 852 F.3d 262 (3d Cir. 2017) (finding no waiver despite delay lasting over one year and despite significant discovery disputes); *c.f. Thompson,* 2019 WL 2636307 at *9 (finding waiver where defendants failed entirely to mention arbitration for three years, all while litigating the case on its merits). Accordingly, the Court finds that Defendants did not waive their right to file a motion to compel arbitration.

### ii.      Whether Plaintiffs Assented to the Arbitration Agreements

Plaintiffs next argue that, even if waiver is not applicable, the arbitration agreements are nonetheless invalid for two reasons: first, Plaintiffs claim that none of them recall reviewing or executing the agreements—and provide affidavits in support—and argue that this creates a factual dispute as to whether Plaintiffs actually assented to these agreements. (Doc. 179 at 31.) Second, Plaintiffs argue that Defendants failed to disclose this case when presenting the arbitration agreements, and thus Plaintiffs could not truly assent to arbitration.[4] (*Id*. at 32–32.) In response, Defendants argue that none of Plaintiffs' affidavits actually state that the individuals do not remember, and instead state only that each individual has "been told" they executed an arbitration

---

[4] Plaintiffs' arguments in this section are not entirely clear, and it appears they make a cursory argument that the arbitration agreements constitute unenforceable clickwrap. (Doc. 179 at 30.) To the extent that Plaintiffs are in fact arguing this, the Court finds it unavailing, as "clickwrap agreements are routinely enforced by the courts." *HealthplanCRM, LLC v. AvMed, Inc*., Civ. No. 19- 1357, 2020 WL 2028261, at *18 (W.D. Pa. Apr. 28, 2020) (citing *Meyer v. Uber Techs., Inc*., 868 F.3d 66, 75 (2d Cir. 2017).

agreement. (Doc. 180 at 15.) Further, Defendant argues that not all Arbitration Plaintiffs even completed an affidavit. (*Id*.)

Although Plaintiffs claim no memory of signing the arbitration agreements, "parties are presumed to have knowledge of contracts they have signed." *Quilloin v. Tenet HealthSystem Philadelphia, Inc*., 673 F.3d 221, 237 (3d Cir. 2012). "With respect to contractual disputes, federal courts have consistently held that a party's failure to recall a relevant event is insufficient to raise an issue as to the occurrence of that event." *Gomez v. Rent-A-Ctr., Inc*., No. 2:18-CV-1528-KM-SCM, 2018 WL 3377172, at *3 (D.N.J. July 10, 2018) (finding that a plaintiff's certification that she did not remember electronically signing an arbitration agreement was insufficient to defeat a motion to compel arbitration). Standing alone, Plaintiffs' mere assertion that no Plaintiff remembers executing the arbitration agreements is insufficient to create a factual dispute, particularly in the face of Defendants' records showing that each employee logged in using their personal account—or, for new employees, using a unique identifier sent to their email—to execute the arbitration agreement.

Plaintiffs' second argument—that any assent was invalid because Plaintiffs were not informed of this pending lawsuit—is largely duplicative of their argument that implementing the arbitration agreements constituted improper contact with putative members. Therefore, the Court addresses these arguments together below.

### iii.   Whether Defendants' Implementation of the Arbitration Agreements was Improper Contact with Putative Members

Plaintiffs argue that, because Defendants implemented the arbitration agreements during the pendency of this lawsuit, the arbitration agreements must be considered invalid because they constitute improper contact with putative class members. (Doc. 179 at 33.) Plaintiffs contend that

they would not have assented to the arbitration agreement had they known about this case, and thus any supposed assent to the agreements is invalid for failure to disclose this litigation. (Doc. 179 at 32.)

The court's analysis in *Jones v. Judge Tech. Servs. Inc*. is instructive here. 2014 WL 3887733. In *Jones*, the plaintiffs alleged that the defendant's implementation of "an arbitration agreement for new employees without notifying them of [pending] litigation" constituted improper communication with putative class members. *Id.* at *6. The court found that, because the *Jones* arbitration plaintiffs "were new employees, none of whom had performed any work for [d]efendant, let alone worked hours over forty for which they were not paid an overtime premium," "the Arbitration Plaintiffs were not class members or putative class members" when asked to execute an arbitration agreement. *Id*. at *6–7.

This same analysis applies to Plaintiffs who executed an arbitration agreement as a "new hire" through iCIMS or Workday. This set of Arbitration Plaintiffs had not worked for Francesca's prior to executing an arbitration agreement, and thus were not putative class members, as they had not worked any overtime that they were allegedly uncompensated for. Thus, Plaintiffs' argument that any arbitration agreement was invalid for failure to mention this lawsuit fails as to the new hires who executed agreements.

As to the existing employees who executed agreements, a court does "not limit communications unless those communications were actually abusive." *Jones,* 2014 WL 3887733, at *7. "A defendant employer may communicate with prospective plaintiff employees who have not yet 'opted in,' unless the communication undermines or contradicts the Court's own notice to prospective plaintiffs." *Id*. (internal quotation omitted). As Defendants point out here, 148 out of the 151 Arbitration Plaintiffs executed an arbitration agreement prior to the Court granting

conditional certification in this case. (Doc. 180 at 17–18.) The 3 Arbitrations Plaintiffs who executed agreements after conditional certification was granted were new hires who, as explained above, would not yet be putative class members. (*Id.*); *see Jones*, 2014 WL 3887733, at *7 (finding it significant that the arbitration plaintiffs in the case agreed to arbitrate prior to the court granting conditional certification).

The case law Plaintiffs cite in support of their position is inapposite, as it addresses far more invasive communication between defense counsel and putative class members. For example, Plaintiffs rely heavily on *Weller v. Dollar Gen. Corp.*, Civ. No. 17-2292, 2019 WL 1045960 (E.D. Pa. Mar. 4, 2019). In *Weller*, the court found improper communication when defense counsel visited with 16 employees and putative class members, interviewed them extensively, and "obtained declarations from some of them to support opposition to [the plaintiff's] motion to certify his class." *Id*. at *1–3. The situation in *Weller* is simply not analogous to the one here.

### iv.   Whether the Court or the Arbitrator Determines if Plaintiffs Waived the Right to Proceed Collectively

Finally, Plaintiffs argue that even if the arbitration agreements are valid, it is up to the arbitrator to determine whether Plaintiffs have waived the right to proceed collectively. (Doc. 179 at 28.) Plaintiffs argue that both agreements incorporate the rules of the American Arbitration Association ("AAA"), which dictate that questions of arbitrability are submitted to the arbitrators, and further, that the agreements specifically state that the arbitrator has exclusive authority to resolve arbitrability disputes. (Doc. 179 at 37.) Defendants argue that this issue of class arbitration is a question of arbitrability to be decided by the Court. (Doc. 180 at 19–20.)

The Third Circuit has provided that "the availability of class arbitration is a 'question of arbitrability' for a court to decide unless the parties unmistakably provide otherwise." *Opalinski*

*v. Robert Half Int'l Inc.*, 761 F.3d 326, 335–36 (3d Cir. 2014). Specifically as to arbitration agreements incorporating AAA rules, "it is not enough for [a party] to establish that the AAA rules provide for the arbitrators to decide, *inter alia*, the question of class arbitrability, and that, in turn, these rules are incorporated by reference." *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 761 (3d Cir. 2016). An arbitration agreement "instead must present 'clear and unmistakable evidence' of an agreement to arbitrate this specific question. *Id*. (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Here, there is no such "clear and unmistakable evidence" that the parties agreed to arbitrate the availability of class arbitration. The 2018 Arbitration Agreement contains a general provision stating that the AAA rules apply, and that the arbitrator "shall have exclusive authority to resolve any dispute relating to the enforceability or formation of this Agreement and the arbitrability of any claim, complaint or dispute between the Parties." (Doc. 176-3 at 5.) However, in the section titled "Waiver of Class and Collective Action and Representative Action Claims," the agreement states, "[n]otwithstanding anything to the contrary in the AAA Employment Arbitration Rules & Mediation Procedures, and the general grant of authority to the arbitrator in paragraph 1 of the power to determine issues of arbitrability, the arbitrator shall have no jurisdiction or authority to compel any class or collective action." (Doc. 176-3 at 6–7.) This later qualification prohibits finding the requisite "clear and unmistakable evidence."

The 2017 Arbitration Agreement similarly states that the AAA rules apply, but it does not contain any provision explaining who decides general questions of arbitrability or class-specific questions of arbitrability. (Doc. 176-2 at 17–19.) But, as explained above, a reference to AAA rules does not constitute "clear and unmistakable evidence" of an agreement to arbitrate the specific question of class arbitration. *Chesapeake Appalachia, LLC*, 809 F.3d at 761.

"The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *Joseph v. Quality Dining, Inc.*, 244 F. Supp. 3d 467, 473 (E.D. Pa. 2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011)). The terms of the arbitration agreements here clearly waive any right to proceed on a classwide or representative basis, and Plaintiffs do not make any argument to the contrary. Accordingly, as set out by the terms of the arbitration agreements, the 151 Arbitration Plaintiffs are required to arbitrate their claims on an individual basis. *See Joseph*, 244 F.Supp.3d at 475 (requiring plaintiffs to arbitrate on an individual basis where the "agreements and incorporated Rules plainly purport to waive class procedures in arbitration").

## IV.    CONCLUSION

For the reasons detailed above, Defendants' Motion for Partial Summary Judgment (Doc. 140) is DENIED; and Defendants' Motion to Compel Arbitration (Doc. 176) is GRANTED as to the 151 Plaintiffs who have executed arbitration agreements.[5] Under the FAA, when an action is

---

[5] This includes the following 84 Plaintiffs who accepted the 2018 Arbitration Agreement: Micalyn Austin; Shannon Mercier; Heather Young; Johanna Akers; Janice Nichols; Brittany Tillery Simon; Gabrielle Todorow; Lenzy Obenour; Jennifer Chambers; Stacey Donnelly; Shireka Lynch; Melissa Potter; Jillian Molinari; Nicole Spinner; Courtney Fedor; Darline Jenson; Cori Morrison; Jasimere Mcmillan; Kimberly Dabit; Robin Reiners; Schanvel Wall; Laura Hoddinott; Elizabeth Smith; Nicolette Floor; Kristin Leitz; Alicia Mcarthur; Meghan Dostou; Lindsey Merlo; Lindsay Multack; Joel Logan; Susan Sabin; Jessica Gutierrez; Lauren Fields; Noelle Ballou; Khoi Murray; Holly Wall; Tiffany Reich; Kassaundra Moore; Jennifer Key; Josephine Fiordilino; Kourtnee Marshall; Shannon Morgan; Kristen Reilly; Lindsey Vereecke; Amanda Mertz; Deanna Smith; Jessica Lee; Shannon McCollom; Marnie Kleinfeld; Dana Monteith; Leigha Beck; Angella Parke; Ashley Sturtevant; Megan Glastetter; Nicole Ward; Zachery Dunnaway; Deborah Chavez Zapata; Kaila McCoppin; Jennifer Pagurek; Francesca Lupoli; Trae Warner; Morgan Parr; Ellen Schmieder; Johanna Romero; Jennifer Browne; Stephanie Treichel; Lauren Wolfe; Samantha Schall; Taylor Ouellette; Rachel Govoni; Sherri Bisinger; Brittany Moulton; Jessalyn Daggs; Amanda Giessler; Melissa Jones; Jazmin Mcquien; Maria Price; Erica Ragland; Claudia Villamor; Julia Amundson; Sundy Peak; Cara Benson; Natalie Boardway (Duclos); and Megan Patterson.

This also includes the following 67 Plaintiffs who accepted the 2017 Arbitration Agreement: Ebtehal Ali Ben Shaban; Colleen Grothe; Kimberly Stack; Heather Laflamme; Courtney McGovern; Candyce Bradley; Jaime King; Mary Hubbard; Maria Haischer; Erin Nelson; Cameron Crocker; Kendra Baity; Rebecca Hart; Elizabeth Allen; Victoria Shieler; Nyecshia S. Silas; Jessica Bishop; Kathryn Edge; Melissa Giles; Michelle Shaw-Kurtz; Casey Nicole Green; Chasity Busbee; Melanie Thelen; Michelle Sanders; Rachel McGrew; Kaitlyn Wright; Crystal Dupree; Savannah Williams; Lindsey Banner; Macy Manahan; Jenna Illikainen; Ashely Askins; Jennifer Hage; Andrea Teeter; Melinda Phillips; Shamia Cal; Wisper Charette; Heather Streitenberger; Jennifer Lynne Farkas; Gertrude Fisher-Koeln; Annabel Andriotakis; Danielle Prulello; Monica Reed; Kristin Webb; Claire Hicks; Christina Naughton; Courtney

referred to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Thus, when a party applies for a stay pending arbitration, "the plain language of § 3 affords a district court no discretion to dismiss" that party. *Lloyd v. HOVENSA, LLC*., 369 F.3d 263, 269 (3d Cir. 2004). However, because "neither party has requested a stay here," the Court "will dismiss the Arbitration Plaintiffs' claims without prejudice to their ability to pursue arbitration." *Jones*, 2014 WL 3887733, at *8. An accompanying Order shall issue.

Dated:_____6/14/2020_____                    /s Robert B. Kugler_____
                                                    ROBERT B. KUGLER
                                                    United States District Judge

---

Johnson; Patrica P. Angell; Courtney Oliva Kreitzer; Lindsey Beck; Ashley Lively; Brittany Nelson; Shealah N. Goujon; Maria Mancini; Lesley D. Jones; Lindsey Gozdick; Carolyn Cunningham; Ashle E. Quitadamo; Kayla J. Yerger; Courtney Burgess; Patti Brown; Rachel E. Murray; Winter F. Flodman Cash; Chelsea Soldner; Lisa Ingram; Sarah Lewis; and Letia Lewis.

The Court also notes that, although the motion to compel arbitration has been granted as to one lead Plaintiff—Plaintiff Prulello—this does not dismiss from this action opt-in Plaintiffs who did not execute arbitration agreements, as their FLSA claims are still represented by the remaining lead Plaintiffs named in the Amended Complaint. *See Joseph*, 244 F.Supp.3d at 475 (dismissing opt-in FLSA plaintiffs only where *all* lead Plaintiffs were bound by agreements to arbitrate individually).